UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| APV NORTH AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 2396 |
| | ) | |
| v. | ) | Hon. Joan B. Gottschall |
| | ) | |
| TRANSINDUSTRIAL DEVELOPMENT CORP. | ) | |
| and PEEPLES INDUSTRIES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a diversity action (removed from state court) in which plaintiff APV North America, Inc. ("APV") alleges that defendant Transindustrial Development Corp. ("TIDC") breached certain loan agreements, and that TIDC's parent holding company Peeples Industries, Inc. ("Peeples") breached its guaranty obligations for TIDC's loan agreements with APV.  TIDC and Peeples have moved to dismiss APV's complaint under Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6), or, in the alternative, to transfer this case to the Middle District of Georgia, Macon Division pursuant to 28 U.S.C. §§ 1406(a) or 1404(a).[1]  For the reasons set forth below, defendants' motions to dismiss for lack of venue and personal jurisdiction are denied.  Defendants' motion to transfer venue is denied without prejudice.  Defendant's motion to dismiss for failure to state a claim upon which relief can be granted is denied with respect to Count II and granted without prejudice with respect to Counts I and III.

APV is a Delaware corporation primarily engaged in manufacturing food and beverage

---

[1] In their reply brief, defendants withdraw their motion to dismiss under Fed. R. Civ. P. 12(b)(5) for insufficient service of process.

1

equipment.  APV's primary place of business is Illinois.  Defendants TIDC and Peeples are Georgia corporations with their principal places of business in Georgia.  Peeples is the parent company of TIDC, and TIDC "is engaged in the manufacturing and merchandising industry." (Compl. ¶2.)

In April 2000, APV and TIDC executed a Letter of Intent ("LOI"), pursuant to which (among other things) APV was to lend TIDC funds to develop certain machinery, and TIDC was to purchase necessary equipment exclusively from APV.  By affidavit, APV has alleged that Gay Mayfield ("Mayfield"), an officer of both Peeples and TIDC, contacted APV to initiate the discussions that led to the LOI, and that Mayfield made a trip to Illinois to engage in negotiations.  There were also several negotiations by telephone between APV's Illinois location and Mayfield's office in Georgia.  Mayfield executed the LOI in Georgia and APV's president executed it in Illinois. Under the LOI, APV lent TIDC $202,500.00 and stated that TIDC could repay the total loan amount either: (i) in full on or before October 15, 2000; or (ii) according to a three-year repayment schedule, beginning on October 15, 2000.  APV alleges that it wired the loan amount to Peeples, not TIDC, at Peeples' request.  Apparently, the machinery failed its commercial scale demonstrations, and the technology found no buyers.

APV alleges that TIDC has not made any of the payments specified by the LOI to repay the loan (Count I).  APV also alleges that Peeples agreed to guarantee TIDC's obligations under the LOI, and that Peeples made a single payment of $2,250.00 (Count II).  In counts I and II, APV seeks judgment for $202,500 in principal plus the interest accrued at 12% per year.  In Count III, APV alleges that TIDC issued several purchase orders during late 2000 and 2001 for which APV issued corresponding invoices, that TIDC has "vexatiously and unreasonably delayed paying the amount due," and that under APV's standard sales terms and conditions,

2

TIDC owes interest on each order at the rate of 1-1/2% per month.  It is unclear if TIDC has paid the principal amount of the purchase orders, but the complaint requests an award only of the interest.

## Personal Jurisdiction

Defendants have moved to dismiss the complaint for lack of personal jurisdiction.  Faced with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of personal jurisdiction over the defendant.  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).  In analyzing such a motion, the allegations in the complaint are taken as true unless controverted by a defendant's affidavit.  Any factual conflicts are resolved in favor of plaintiff.  *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

For the court to exercise personal jurisdiction over a defendant, it must be proper under both the United States and Illinois Constitutions.  *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F. Supp. 2d 821 (N.D. Ill. 1999).  Because there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citation omitted), this Court will analyze personal jurisdiction with a single due process inquiry.  *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997).  In order for a court to exercise personal jurisdiction over a non-resident defendant, due process under the U.S. Constitution requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A court can acquire personal jurisdiction over a defendant through either general or specific jurisdiction.

Neither party argues that the court has general jurisdiction over defendants.  A defendant

is subject to specific jurisdiction when it has "purposefully established minimum contacts with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). In determining the issue of minimum contacts, courts consider whether the defendant could "reasonably anticipate being hauled into court" in Illinois. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "An out-of-state party's contract with an in-state party is alone not enough to establish the minimum contacts." *RAR, Inc.*, 107 F.3d at 1277. Only contacts related to the suit are considered. *Burger King*, 471 U.S. at 1278*; RAR Inc.*, 107 F.3d at 1277. Jurisdiction does not depend upon a mechanical test. *Burger King*, 471 U.S. at 478-79. Instead, courts should examine the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479. More specifically, courts look to factors including, "who initiated the transaction, where the negotiations were conducted, where the parties executed the contract and where the defendant would have performed the contract.*" Mac Funding Corp.*, 215 F. Supp. 2d at 981.

While Peeple's and TIDC's contacts with Illinois are not extensive, they are sufficient to provide this court with personal jurisdiction over them in this suit. The transaction was initiated by TIDC when Mayfield, an officer of both Peeples and TIDC, contacted APV to discuss setting up a business relationship that led to the contract at issue. At least some initial negotiations took place at APV's headquarters in Illinois between Mayfield and representatives of APV, and subsequent negotiations took place between APV's general counsel and Mayfield by telephone and writing between Illinois and Georgia. The contract was signed by each party in its home state (APV was the final party to sign the agreement, and did so in Illinois). Finally, performance of the contract took place (or was supposed to take place) in part in Illinois; APV wired the money from its Illinois bank to TIDC and TIDC was required to make payments to

4

APV in Illinois.  (Compl. ¶2); (Pl.'s Resp. ¶2.).  While much of the performance and some negotiation took place outside of Illinois (in Georgia), because TIDC solicited the contract via a personal meeting in Illinois and in calls to Illinois, this court has personal jurisdiction over TIDC.  *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1218 (7th Cir. 1990) ("[D]efendants' active solicitation, even if for just a single contract, amounted to a purposeful establishment of contacts with the forum that easily satisfied the dictates of due process.") (citing *Madison Consulting Group v. South Carolina*, 752 F.2d 1193 (7th Cir. 1985)).

      Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## Venue

      Defendants argue that venue is improper in this district under 28 U.S.C. § 1391(a) which allows diversity cases to be heard in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Since subcategory (2) is the only basis for venue in this case, the question is whether a substantial part of the events or omissions giving rise to this case occurred in this district, or whether a substantial part of the property that is the subject of this action is situated in this district.  "This standard does not require that the majority of the events pertaining to the case took place in the forum district." *D'Ancona & Pflaum LLC v. M2 Software, Inc.,* No. 00 C 7150, 2001 U.S. Dist. Lexis 11375, at * 3 (N.D. Ill. August 2, 2001).  Because venue may be proper in more than one district, "[i]f the selected district's contacts are 'substantial' it should make no difference that another's are more so, or the most so." *Vandeveld v. Christoph*, 877 F. Supp.

5

1160, 1166-67 (N.D. Ill. 1995) (quoting *Merchants National Bank v. Safrabank,* 776 F. Supp. 538, 541 (D. Kan. 1991); *Hyatt Corp. v. Pers. Communs. Indus. Ass'n*, 2004 U.S. Dist. LEXIS 25351, at *5-*6 (N.D. Ill. Dec. 14, 2004). "Failure to make payment in a district pursuant to a contract is enough under the statute to establish venue in that district." *D'Ancona & Pflaum LLC,* 2001 U.S. Dist. Lexis 11375, at * 3 (citing *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998)) (Illinois venue proper where agreement negotiated and executed outside of Illinois required payment in Illinois).

Defendants say that the machinery which is at the root of this case is located in Georgia, and that they intend to file a counterclaim relating to APV's alleged failures in constructing and servicing equipment located in Eatonton and Wrens, Georgia. APV responds that the complaint alleges breaches of the LOI and a guarantee by Peeples, and does not base its causes of action on the alleged problems in service or performance of the machines. A reading of the complaint supports APV's position; while defendants may plan to file a counterclaim, as of this order, they have not done so, and the negotiations between the parties in Illinois along with the financial transactions involving an Illinois plaintiff and an Illinois financial institution make venue proper here. *See Transact Technologies, Inc. v. 1Source Worldsite*, No. 01 C 8508, 2002 WL 122515, at*5 (N.D. Ill. Jan. 30, 2002) (venue proper in part because contract negotiations took place in Illinois).

## Motion to Transfer

Defendants also argue that, in the event that this court finds venue proper in the Northern District of Illinois, the case should be transferred to the Middle District of Georgia for the

convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a).[2]

A decision to transfer an action is committed to the district court's sound discretion. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). Courts apply a three-factor analysis when faced with a motion to transfer venue. Under this analysis, a case may be transferred if the defendant can demonstrate that: "(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995) (citing *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Limited Partnership,* 807 F. Supp. 470, 474 (N.D. Ill. 1992)).[3] These factors are not rigid, but rather "are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the facts of each case." *Coffey*, 796 F.2d at 220 n.3.

In evaluating the convenience and fairness of a proposed transfer, the court considers relevant private and public interests. The private interests include factors such as plaintiff's initial choice of forum, the situs of material events, ease of access to sources of proof, the availability of compulsory process for the attendance of unwilling witnesses, and the convenience to the parties themselves. *Georgouses v. NaTec Resources, Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997). Defendants, the moving parties, must show that venue in the Middle

---

[2] Section 1404 states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

[3] Venue in this district is proper, and the parties do not dispute that venue is proper in the Middle District of Georgia.

District of Georgia is clearly more convenient than in Illinois.  *See Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citing *Coffey*, 796 F.2d at 219-20).

**Plaintiff's Chosen Forum**

This factor is neutral.  "The weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connection with the operative facts giving rise to the claim." *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995); *D'Ancona & Plaum LLC,* 2001 U.S. Dist. Lexis 11375, at * 5 ("When such a weak relationship exists, the plaintiff's choice of forum becomes "only one of many factors the court considers).  Here, the connection with Illinois is relatively weak, as is demonstrated by an inquiry into the situs of the alleged acts discussed below.

**Situs of Material Events**

As is clear from the court's earlier discussion of venue, while venue is proper in Illinois, it is not the situs of all the material events related to the claims at issue.  The negotiations (with the possible exception of one to two visits to Illinois by defendants' personnel) took place in both Illinois and Georgia, and while money was wired by APV from an Illinois bank, the nonpayment of funds has occurred (or not occurred) from a Georgia party to an Illinois party.  Given that defendants assert that they will file a counterclaim relating to alleged failures of APV in constructing, installing and servicing the machinery in Georgia, it is possible that the situs of many material events could turn out to be in Georgia, but as the pleadings now stand, this factor is neutral at best for defendants.

**Access to Sources of Proof and Convenience of Witnesses**

The third factor, ease of access to sources of proof, involves analysis of the location both

of relevant witnesses and evidence. *The Northwestern Corp. v. Gabriel Mfg., Inc.*, No. 96 C 2004, 1996 U.S. Dist. LEXIS 1800, at *16-17 (N.D. Ill. Feb. 16, 1996) (citation omitted). The party seeking transfer must specify the key witnesses to be called and make a general statement of their testimony. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167-68 (N. D. Ill. 1995). In analyzing this factor "a court should look to the nature and quality of the witnesses' testimony with respect to the issues of the case," not merely the number of witnesses listed by the parties. *Id*. The court also considers the convenience of non-party witnesses.

As to nonparty witnesses, defendants name seven potential third-party witnesses who all reside in the Middle District of Georgia. While defendants' brief does not provide much detail as to their expected testimony, each of these witnesses appears to be expected to testify as to APV's alleged failures in designing, constructing and servicing the machinery. APV responds that these are all nonmaterial witnesses, that the technical issues expected to be the subject of defendants' witness testimony is ancillary to this dispute, and APV offers two material nonparty witnesses, former APV executives (one a resident of Illinois, one a resident of New York) with direct knowledge of the negotiations and terms of the LOI. APV also states that its witnesses who are still employed by APV reside either in Illinois or in Goldsboro, North Carolina, and that the cost to APV to bring its Goldsboro-based witness(es) to Illinois would be less than to Georgia, partially because the APV-employed witnesses could conduct other business in Illinois, whereas they would have to travel to Georgia only to testify. As the parties' submissions now stand, APV's witnesses are more important to this case and this factor slightly favors APV.[4]

---

[4] As was the case with the discussion related to the situs of material events, defendants have indicated that they will file counterclaims which could swing this factor in favor of transfer, but "the Court is unwilling to base a transfer on a claim that has not yet been filed and that might not be filed." *D'Ancona & Pflaum LLC*, 2001 U.S. Dist. LEXIS 11375, at *8. Defendants have

This factor also entails a consideration of where the parties reside and their respective abilities to bear the expense of trial in a particular forum.  *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1130 (N.D. Ill. 1989).  The parties have not argued this issue extensively, but it is clear that APV and defendants would each prefer to argue this case in their respective home districts.  This factor is neutral.

**Public Interest Factors**

In addition to the above private interest factors, public interest factors that may bear on transfer include: (i) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (ii) the court's familiarity with applicable law; and (iii) the congestion of the respective court dockets and the prospects for an earlier trial. *See Hughes v. Cargill, Inc.*, 1994 U.S. Dist. LEXIS 4827, at *2 (N.D. Ill. April 14, 1994).  The first factor is neutral, since this dispute's outcome will directly effect both Illinois and Georgia companies.  The second consideration is also neutral.  Neither party has argued which state's law would apply to this contract dispute, the LOI attached to the complaint does not contain a choice of law provision, and the other applicable written contract submitted (APV's standard sale terms and conditions attached to the contract) is illegible.

With respect to the final factor, the speed with which this case will progress toward disposition, the median time for disposition of civil cases in this District is 5.9 months, as opposed to 11.6 months in the Middle District of Georgia, and 28.4 months to trial here as opposed to 32 months in Georgia.  This factor slightly favors keeping the case in this District.

Taken together, the TIDC and Peeples have failed to show that the Middle District of

---

failed to demonstrate that a transfer of venue is appropriate at this time.

Georgia is clearly more convenient than the Northern District of Illinois. The motion to transfer is denied.

## Motion to Dismiss

Defendants also argue that all counts of the complaint should be dismissed for failure to state cognizable claims. With respect to counts I & III, APV acknowledges that it has incorrectly pled its claims against Peeples instead of TIDC, who is apparently the correct party, and requests leave to amend its complaint to correct these allegations. In light of the fact that this mis-pleading occurs in more than one place in the complaint and that defendants base their motion to dismiss count III almost exclusively on these grounds, the court dismisses these counts without prejudice, with leave to amend within 21 days.

With respect to count II, defendants argue that Peeples never executed a written guarantee agreement, as is required by the Illinois Statute of Frauds, 740 ILCS 80/1. After realleging the factual assertions of count I, APV alleges in count II that "Peeples agreed to guarantee the obligation of TDIC [*sic*] under the LOI, and in fact tendered one payment of $2,250 toward the repayment of the Bridge Loan under the LOI." In its briefing, APV alternatively appears to concede the point that there was no written guarantee as such, but at the same time argues that it must be accorded the opportunity to prove the existence of a written guarantee by Peeples "by presenting a separate writing." (Pl. Resp. at 12-13.) Viewing all facts in the light most favorable to plaintiffs on this motion to dismiss, and in light of the liberal federal notice pleading standard, defendants' motion to dismiss is denied as to count II.

## Conclusion

For these reasons the defendants' motions to dismiss for lack of jurisdiction and lack of venue are denied. Likewise the court denies defendants' motion to transfer. The defendants'

motion to dismiss for failure to state a claim is granted without prejudice as to Counts I and III (with leave to amend within 21 days of the date of this order) but denied as to Count II.

Dated: January 3, 2006                             ENTER:


                                                   _____/s/_____
                                                   Joan B. Gottschall
                                                   United States District Judge